# Commonwealth of Virginia



Case No. CL19002434
Doc No: 3234128

# SUMMONS

## TO THE SHERIFF: YOU ARE HEREBY COMMANDED TO SERVE:

Serve:  Micheal Stefan Nachmanoff
4311 24th Street N
Arlington, VA  22207

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service, response is made by filing in the clerk's office of this court a pleading in writing, in proper legal form, the allegations and charges may be taken as admitted and the court may enter an order, judgment or decree against such party either by default or after hearing evidence.

**Appearance in person is not required by this summons.**

Done in the name of The Commonwealth of Virginia, the 11th day of July, 2019.

James Dawkins
Deputy Clerk

Edward Semonian
Clerk, Circuit Court
520 King Street #307
Alexandria, VA  22314
(703) 746-4044

Copy to Serve

**EXHIBIT A**

VIRGINIA

### IN THE CIRCUIT COURT OF ALEXANDRIA CITY COUNTY

JAMES R. NIBLOCK,

   Plaintiff,

   vs.

IVAN DARNELL DAVIS

   Serve:   8750 Mill Towns Court
                 Alexandria, VA 22309

And

MICHEAL STEFAN NACHMANOFF
   Serve: 4311 24th Street N.
                 Arlington, VA 22207
   Defendants.

Case No. *CL19002434*

2019 JUL -9 AM 10: 11
CLERK CIRCUIT COURT
CITY OF ALEXANDRIA
EDWARD SEMONIAN JR., CLERK
BY: DEPUTY CLERK
FILED

## COMPLAINT

**COMES NOW** the Plaintiff, and in support of this Complaint states as follows:

1. The Plaintiff is a resident of Maryland.

2. The Defendants Ivan Darnell Davis and Michael Stefan Nachmanoff (hereinafter referred to as "DEFENDANTS") are residents of Virginia.

3. Defendants Ivan Darnell Davis ("Davis") and Michael Stefan Nachmanoff ("Nachmanoff") were at all relevant times employed by the Office of Federal Public Defender as lawyers in Alexandria, Virginia and maintained their offices and file records in Alexandria, Virginia.

4. Defendants Davis and Nachmanoff were appointed to represent Plaintiff in a criminal case in U.S. District Court in Alexandria, Va.

5. As attorneys appointed to represent Plaintiff, Defendants Davis and Nachmanoff owed Plaintiff particularized duties as contained in the Virginia Bar's Rules of Professional

1

Conduct, American Bar Association Standards, and other canons of professional conduct including but not limited to:

a.  Fiduciary duty to their client;

b.  Duty of loyalty to their client;

c.  Duty of care;

d.  Duty of confidentiality;

e.  Serving as counselor and to advocate with courage, devotion, loyalty and zealous advocacy to render effective, quality representation;

f.  Not intentionally misrepresenting matters of fact or law to Plaintiff or the court;

g.  Defendants had an obligation to perform all essential steps in defense of the client;

h.  To act with reasonable diligence and promptness;

i.  Not carry a workload that interferes with the rendering of quality representation;

j.  Conduct a prompt investigation of all relevant facts and law pertaining to the case;

k.  Avoid "intentional ignorance" of the facts;

l.  Promptly taking all necessary action to protect the rights of the client, such as filing motions regarding venue, suppression of illegally obtained evidence and dismissal of the charges;

m.  Keeping the client informed of the developments in the case, explaining those developments and the progress of preparing the defense and promptly complying with reasonable requests for information from the client;

n.  After fully informing himself fully on the facts and the law, advising the client with complete candor concerning all aspects of the case;

2

EXHIBIT A

o. Consulting with the client about strategic decisions such as whether to accept a plea agreement;

p. Deferring to the client's desire to testify at trial;

q. Keeping the client advised of developments arising out of plea discussions and all plea offers from the prosecutor;

r. Presenting to the court all available grounds for reducing the sentence of the client;

s. Verifying the information contained in any presentence report;

t. Taking all necessary steps to protect the client's right to appeal;

u. Providing the client all documents in the client file upon client's request.

## JURISDICTION AND VENUE

6. This Court has original and general jurisdiction over this matter pursuant to Virginia Code Section 17.1-513 in that the matter in controversy exceeds the sum of $100.00, exclusive of interest and costs;

7. Category B or permissible venue rests with this Court, pursuant to Virginia Code Section 8.01-262, in that the acts complained of which are the subject of this dispute took place in Alexandria City County, Virginia. Defendant's regularly do business, reside, are employed and or have their offices in Alexandria City County Virginia.

## BACKGROUND

8. Plaintiff owned a mortgage loan origination company located in Reston, Virginia, Americas Mortgage, L.L.C.

9. Defendant's were appointed to represent Plaintiff in a criminal action in U.S. District Court in Alexandria, Virginia on July 11, 2002.

3

10. At the initial meeting between Davis and Plaintiff on July 12, 2002, Defendant Davis told Plaintiff: "Don't tell me anything about the case, I don't want to know, I can't represent you at the preliminary hearing if you tell me any facts".

11. On August 2, 2002, Defendant Davis signed a motion and caused it to be filed in the United States District Court in Alexandria, Virginia. The Motion was styled "Joint Motion to Extend Time to File an Indictment". Defendant Davis told the Court in that Motion: "The parties in this matter have been diligently exploring the possibility of resolving the case prior to indictment. Counsel for both parties have exchanged important information, which is necessary to determine an appropriate disposition of the case."

12. In truth and in fact, at the time of the filing of the that motion, Defendant Davis had no discussions with the prosecutor or Plaintiff about resolving the case and had not exchanged any important information. These facts were hidden from Plaintiff by Defendants until July of 2017.

13. On August 21, 2002, Plaintiff met with Defendant Davis and asked him to explore a plea bargain with the prosecutor. Davis refused to do so, stating "You aren't even in court yet", because no indictment against Plaintiff had been returned. Davis also stated he would not file any motions in the case. For the next eight months Davis filed no motions, just as he had announced.

14. To prepare a defense, Plaintiff asked Davis to issue a subpoena for financial records from Chevy Chase bank, which records would show that Plaintiff was not involved in the majority of transactions described in the indictment, and would exonerate Plaintiff. Davis refused to issue the subpoena.

4

15. On September 3, 2002, the prosecutor sent Davis a "letter to establish the basis for plea discussions" and advised it was "in the interest of Mr. Niblock and the Government to reach a swift resolution of this matter through a plea agreement." The letter outlined the basis for a plea bargain which would have resulted in approximately five (5) years total incarceration. The letter was mailed to Davis in Alexandria, Virginia. Despite Plaintiff's specific request to open plea negotiations, Davis never advised Plaintiff of this communication, the Government's desire to resolve the case, or the Government's favorable sentence calculation contained in the letter. Unaware of this outreach by the prosecutor, Plaintiff proceeded to trial and was subsequently sentenced to two hundred thirty five (235) months incarceration.

16. Plaintiff also asked Davis to file a motion to modify the conditions of bond and remove the ankle monitor which impaired Plaintiff's freedom. Davis refused to file the motion on the sole basis that the prosecutor opposed it.

17. Plaintiff obtained a new counsel to seek modification of the bond conditions. New counsel filed the requested motion. The motion was opposed by the Government, but nonetheless granted by the Court on September 20, 2002 as Defendant Davis sat in the gallery of the courtroom as an observer.

18. On October 24, 2002 Plaintiff was named in forty (40) Counts in a U. S. District Court indictment in Alexandria, Virginia.

19. On November 14, 2002, Plaintiff met with Davis and Nachmanoff at their office in Alexandria, Virginia. Among other items discussed, Plaintiff requested both Davis and Nachmanoff file a motion to suppress evidence illegally seized in June 2002 in the subject criminal case.

5

EXHIBIT A

20. On November 20 and 22, 2002, Davis and Nachmanoff met in their offices in Alexandria, Virginia and planned how to respond to Plaintiff's request for a motion to suppress the results of three separate searches.  At the time of this meeting, the affidavit for three separate search warrants was still under seal and Defendants had never seen the affidavit.

21. On November 22, 2002, Davis wrote a letter on public defender letterhead paper to Plaintiff and placed  it or caused it to be placed in the United States Postal Service mailstream at Alexandria Virginia. In that letter, Davis stated: "[T]here is simply no reasonable legal basis for filing a motion to suppress at this time." In truth and in fact, Davis had no knowledge as to whether there was a legal basis to move to suppress.

22. On December 4, 2002, Davis wrote another letter on public defender letterhead paper and placed it or caused it to be placed into the U.S Postal Service mailstream at Alexandria, Virginia to Plaintiff. Davis told Plaintiff he could not file a motion to suppress because Plaintiff had not "provided us with the materials referred to in my last letter …".  Further, Davis advised: "The deadline for filing motions has now passed …".

23. In truth and in fact, neither Davis nor Nachmanoff had ever reviewed the three search warrant affidavits because they were under seal until February 28, 2003 and not viewed by Davis or Nachmanoff until March of 2003, long after the deadline for filing motions had passed.  Attorney negligence is not a valid legal reason to excuse failure to file the suppression motion in the timeframe mandated by the Court's pretrial Order. Had counsel filed the requested motion, it would have been successful and the results of the criminal proceeding would have been far different.

24. On January 22, 2003 in Alexandria Virginia, Nachmanoff and Davis encouraged Plaintiff to enter into a plea agreement, despite the fact that little to no legal or factual research of

6

the case had been done, no witnesses had been interviewed, and the critical search warrant affidavits had never been seen by Defendants.

25. On January 31, 2003 at Alexandria, Virginia, Nachmanoff placed or caused to be placed into the United States Postal Service mailstream, a letter on public defender letterhead, discussing various plea options, despite the fact that little to no legal or factual investigation of the case had been done, no witnesses had been interviewed,  and no review of the search warrant affidavit had taken place.  In fact, even though the deadline to file motions had long passed,  Defendants had made no effort whatsoever to obtain a copy of the search warrant affidavit(s).

26. On February 19, 2003, Plaintiff spoke telephonically with Nachmanoff regarding the three search warrant affidavits. Nachmanoff told Plaintiff he had copies of all three affidavits in his possession and had reviewed them.

27. Plaintiff made a specific written demand to Nachmanoff for the three affidavits on February 23, 2003.

28. On February 25, 2003,  Nachmanoff and Davis discussed how to respond to Plaintiff's e-mail request for the search warrant affidavits they did not have.

29. On February 25, Nachmanoff telephoned Assistant U.S. Attorney Dana Boente and requested copies of the three search warrant affidavits Davis and Nachmanoff falsely told Plaintiff they had in their possession and had  reviewed.

30. On February 26, 2003, Plaintiff received an email from Nachamanoff originating in Alexandria, Virginia, stating there was no basis to dismiss the indictment on the basis of a Speedy Trial Act violation, a motion Plaintiff requested Defendants file.

EXHIBIT A

31. On February 26, 2003, Plaintiff sent an email to Nachmanoff in Alexandria, Virginia asking him to file a motion to recuse U.S. district judge Hudson for being legally biased.

32. On February 28, 2003, AUSA Boente transmitted by private courier or placed or caused to be placed into the United States Postal Service Mail, a cover letter and copies of the three search warrant affidavits at issue in Plaintiff's criminal case. The documents were received by Nachmanoff on February 28, 2003 in Alexandria, Virginia.

33. On March 3, 2003, Nachmanoff made an entry in the official records of the public defenders office in Alexandria stating he reviewed the three search warrants for the very first time. The records show Nachmanoff spent less than one hour on the review.

34. During February and March, 2003, Plaintiff asked Nachmanoff to have the public defender's investigator interview several defensive witnesses. This included a March 6, 2003 email to Nachmanoff at his office in Alexandria, Virginia.

35. On March 18, 2003, Plaintiff e-mailed head public defender and Defendants' supervisor - Frank Dunham in Alexandria, Virginia, requesting he file a motion to dismiss the indictment for violation of the Speedy Trial Act ("STA") and a motion to suppress illegally seized evidence.

36. In March of 2003, Nachmanoff sent Dunham an interoffice memorandum in Alexandria, Virginia stating that at Plaintiff's arraignment "the Court found good cause to set the trial beyond the deadline set by the Speedy Trial Act." This statement was intentionally and materially false and Nachmanoff knew or should have known this statement was false. In truth and in fact, the court made no such finding. Further, Nachmanoff was not present at the arraignment and there was no transcript of the proceeding at the time Nachmanoff authored his memorandum.

8

**EXHIBIT A**

37. On March 19, 2003, Dunham sent Plaintiff an email from Alexandria Virginia stating there was no legal basis to file the STA motion or the suppression motion. Dunham based his conclusions on false statements made to him by Defendants Davis and Nachmanoff.

38. On March 20, 2003, Plaintiff met with Nachmanoff in Alexandria, Virginia. Plaintiff asked Nachmanoff to file a motion to dismiss the indictment based on lack of venue because the indictment stated the wire transmissions charged as wire fraud Counts did not go from, through, or into the Eastern district of Virginia. Nachmanoff stated such facts were inconsequential. In truth and in fact, clearly established law forbids prosecution in a district not touched by a wire and a motion to dismiss would have succeeded.

39. On March 27 and March 28, 2003, Davis filed two in *limine* motions. These were the only motions Davis or Nachmanoff filed in the eight (8) months pendency of Plaintiff's case.

40. On March 31, 2003 Plaintiff's trial began in Alexandria, Virginia U.S. District Court. Nachmanoff informed Plaintiff he and Davis would be presenting no witnesses, no evidence and not presenting any defensive case whatsoever. Nachmanoff stated he and Davis would only make a closing argument.

41. Although Nachmanoff refused to file the motion with exhibits for recusal of Judge Hudson that Plaintiff requested, Nachmanoff raised the matter orally just minutes before trial on March 31, 2003. Nachmanoff reminded Judge Hudson he had heard the directly related civil case in Fairfax County as a state judge just eight months before this criminal trial. Judge Hudson declined to recuse on the basis that he had "no recollection" of that matter. A competent attorney knows that recollection or lack thereof is specifically excluded as outcome determinative of the recusal motion by well established federal law. Had

9

Nachmanoff or Davis filed the requested motion with available supporting exhibits, Plaintiff would not have gone to trial and been sentenced by a legally biased judge.

42. The court ruled Davis' in *limine* motion to exclude evidence was filed too late and should have been filed eight months prior. Davis failed to do so.

43. On the first day of trial in Alexandria, Virginia, March 31, 2003, Plaintiff provided Davis original evidentiary documents exculpating Plaintiff from charges in the indictment. Davis refused to examine or use the evidence and told Plaintiff to "hide them before the prosecutor sees them". The evidence was never introduced at Plaintiff's trial and never given to the prosecutor.

44. During the second day of trial on April 1, 2003, Plaintiff informed Davis and Nachmanoff he wanted to testify at his trial. Both attorneys refused to let Plaintiff testify. Plaintiff's wife, Judy Niblock has stated in an affidavit that Defendants refused to let Niblock testify at his own trial.

45. During the evening of April 1, 2003, Nachmanoff called Plaintiff at home and told him if he gave up his trial rights and pled guilty the next morning the Government would return $50,000.00 of his children's college tuition funds which had been seized by the United States. Nachmanoff told Plaintiff if he did not plead guilty, Plaintiff's children would be left with nothing and Plaintiff would surely receive a sentence of 30 years.

46. On April 2, 2003, Plaintiff entered a plea of guilty to five counts of wire fraud. Nachmanoff signed and presented the plea agreement to the district court. The plea agreement contained no mention of the $50,000.00 promised payment from the Government which Nachmanoff negotiated with the United States Attorney. Neither Nachmanoff, Davis, or AUSA Boente informed the Court orally or in writing of the

10

promised payment.  Subsequent to Plaintiff's guilty plea and sentencing, the Government did in fact pay $50,000.00 to Plaintiff's wife, Judy Niblock.

47.  In June of 2003 and on prior occasions, Plaintiff advised Defendants he had in excess of $3,915,000 in business assets which had been unlawfully obtained by Advantage Investors Mortgage ("AIM"), a purported victim in Plaintiff's criminal case. AIM was already under investigation for mortgage fraud by the Department of Housing and Urban Development for actions wholly unrelated to Plaintiff.  For those actions AIM and its officers were subsequently barred from HUD business for five years.

48.  Plaintiff advised Defendants that employees of AIM had obtained the $3.9 million in assets illegally. An officer of AIM testified at Plaintiff's criminal trial. Plaintiff provided Defendants documentary evidence and  directed Defendants to investigate and locate these assets. Defendants refused to investigate or make any inquiry or take any steps to protect these assets. Plaintiff provided Defendants a letter from a reputable attorney   which confirmed in part Plaintiff's factual allegations. Had Defendants investigated and presented this evidence to the Court at Plaintiff's sentencing, such facts would have lowered Plaintiff's sentence by more than five (5) years and reduced his court ordered restitution by $3.9 million.

49.  On July 21, 2003, Plaintiff was sentenced to the maximum of the Guideline range sentence calculated for his offense – 235 months. After sentencing, Plaintiff told Davis he wanted to  appeal that judgment.  Davis refused to file a notice of appeal on Plaintiff's behalf. Davis in fact  officially terminated all representation by the public defenders office before the legal period to file a notice of appeal had  even ended. Davis falsely told Plaintiff orally and in writing all appeal rights were waived, when in truth and in fact they were not and

11

there were appeal rights specifically reserved by the plea agreement. Davis took no steps to protect Plaintiff's right to appeal the conviction and sentence.

50. On November 5, 2003 and numerous occasions thereafter, Plaintiff sent letters making written requests for a copy of his file documents to the public defenders office in Alexandria, Virginia. The requests included all e-mails and letters to and from Plaintiff, the U.S. Attorneys Office, or any other agency or attorney concerning Plaintiff, all notes, and all records of any conversations with Plaintiff.

51. On November 20, 2003, supervisory public defender Frank Dunham met with Davis and Nachmanoff in Alexandria, Virginia to discuss Plaintiff's written request for file documents. Nachmanoff, Davis and Dunham knew to a practical certainty that releasing all responsive documents would call into serious question the competence of the attorneys' performance in Plaintiff's criminal case and expose them to professional misconduct sanctions and negative publicity. Defendants and Dunham then reviewed and screened the file documents to be sent to Plaintiff, agreeing among themselves to withhold critical documents from Plaintiff, and thereby prevent discovery of critical facts. The documents they agreed to release were sent from Alexandria, Virginia via United States Postal Service mail on November 21, 2003. In the transmittal letter on public defender stationery, the attorneys falsely stated: "A copy of your official file is enclosed with this letter, which should contain all correspondence sent or received by this office concerning your case …". This statement was knowingly and intentionally materially false, because the three attorneys had agreed to withhold critical documents Plaintiff requested and needed for his habeas corpus motion and which the attorneys knew were relevant to Plaintiff's requests.

52. The package of documents sent by the public defender's office was approximately one quarter (1/4) inch thick. Plaintiff relied on the statements of the office of public defender and Defendants that these documents represented the entire responsive documents in his file while preparing his habeas corpus motion.

53. On March 29, 2004, the U.S. District Court Clerk docketed Plaintiff's habeas corpus motion. Plaintiff also filed a motion for the recusal of district court judge Henry Hudson, as he had previously requested Defendants to do. Plaintiff's *pro se* motion cited Hudson's involvement in the state civil case in Fairfax County, Virginia with the facts and copies of evidence he had previously provided Nachmanoff.

54. On April 8, 2004, Judge Hudson entered an Order recusing himself from the case, agreeing he had been legally biased against Plaintiff as a matter of law at the time of trial and sentencing. Had Defendants filed the requested and necessary motion, Plaintiff would not have been illegally sentenced by a legally biased judge.

55. On August 9, 2004, the district court Ordered the United States to file a Response to Plaintiff's habeas corpus motion within sixty (60) days.

56. On August 11, 2004 and continuing until September 15, 2004, Nachmanoff, Davis and Dunham met in Alexandria, Virginia on at least ten (10) occasions to discuss and agree upon how they would handle retroactively address Plaintiff's allegations of attorney ineffectiveness and what statements each would make in their affidavits opposing Plaintiff's habeas corpus motion. Defendants knowingly and willfully agreed to provide false information in their affidavits to the district court to deny Plaintiff habeas corpus relief and to coverup their errors, false statements, and violations of professional rules of conduct.

13

57. During September 2004, Davis and Nachmanoff met in Alexandria Virginia and agreed to provide Assistant U.S. Attorney Dana Boente drafts of their proposed affidavits in opposition to Plaintiff habeas corpus motion before such affidavits were filed in district court. On September 15, 2004, Nachmanoff sent the draft affidavits of himself, Davis and Dunham to AUSA Boente for editing. The draft affidavits were sent via facsimile and United States Postal Service mail from Alexandria, Virginia with a cover letter on official public defender stationery.

58. After review by AUSA Boente, Davis made changes to his affidavit on September 24, 2004. On September 24, 2004, Davis and Nachmanoff signed the final versions of their now approved affidavits. Dafendants then sent these Government approved and edited affidavits to AUSA Boente in Alexandria, Virginia for filing in district court with the Governments brief in opposition to habeas relief for Plaintiff.

59. In his September 24, 2004 affidavit, Nachmanoff admits he "did negotiate the release of approximately $50,000 of seized funds for the benefit of his children". This is a clear admission of violation of ethical rules, court officer duties, and Federal Rule of Criminal Procedure 11, requiring all terms of a plea agreement be disclosed to the Court to allow the court to weigh the voluntariness of a guilty plea.

60. Nachmanoff stated in his affidavit a motion to suppress could not be filed because Plaintiff failed to provide him with "further, specific information" regarding facts and circumstances surrounding the searches. Nachmanoff knowingly and willfully failed to inform the Court of the material fact that a suppression motion could not have been filed because he had never obtained or reviewed a copy of the affidavit within the time such a motion was legally permitted to be filed. Nachamanoff's sworn statement was knowingly and intentionally

14

**EXHIBIT A**

false and designed to mislead the district court, to deny Plaintiff habeas relief and thereby mask Defendant's failures to perform his required duties.

61.  Nachmanoff falsely stated in his affidavit that he did not refuse to allow Plaintiff to testify at trial. This statement was knowingly and intentionally false, and designed to mislead the district court to deny Plaintiff habeas corpus relief and coverup Defendant's failures to perform his required duties.

62.  Davis stated in his affidavit he conducted all necessary and appropriate legal research and "Counsel then planned an appropriate trial strategy based on the results of legal research and investigation of the underlying facts of the case." In truth and in fact, case notes created by Davis and entered in the official records of the public defenders office for March 27, 2003 state Davis had a "lack of case theme, theory or strategy ...". Davis' sworn statement to the court was intentionally misleading on a material point. Davis' statement was knowingly and intentionally  false on a material point. Davis' false statement was designed to mislead the court and prevent the true facts from emerging and prevent discovery of the fact that Davis had failed to perform his required duties.

63.  Davis stated in his affidavit that his investigator did attempt to locate and interview the defensive witnesses Plaintiff wanted interviewed for trial. This statement is knowingly and intentionally false and designed to mislead the court on a material point. On September 1, 2017 the named investigator - James Allard - admitted to Plaintiff he did not attempt to locate or speak with any defensive witnesses and any representation by former attorneys of the public defenders office that such attempts were made is untrue.

64.  Davis' statement in his affidavit that "we had no legal basis to file a non-frivolous motion to suppress", is knowingly and intentionally false, designed to mislead the court on a

material point and prevent discovery of the facts, because in truth and in fact, Davis could not file a motion to suppress within the permitted time because he had never read the search warrant affidavit and had made no attempts to obtain it.

65. Davis falsely stated Plaintiff never asked him to appeal. In truth and in fact, Davis received oral and written communications from Plaintiff asking for an appeal and some court action for reconsideration of the sentence. Davis' statement is intentionally and willfully false on a material point was designed to deny Plaintiff his rights and mislead the habeas corpus court and coverup Defendant's failures to perform his duties to Plaintiff.

66. Plaintiff's habeas corpus motion was denied by the district court on February 28, 2005. In its opinion denying relief, the court relied heavily on the false statements contained in the affidavits of Nachmanoff and Davis. If not for the false statements of Defendants Davis and Nachmanoff, the results of that proceeding would have been different.

67. On January 10 and 19, 2008, Plaintiff mailed to Nachmanoff at his office in Alexandria, Virginia additional letters demanding copies of file documents. Nachmanoff refused to provide responsive documents. A formal complaint about Nachamnoff's conduct was then made to the Virginia State Bar.

68. On March 7 2008, the Virginia State Bar sent via United States Mail and facsimile to Nachmanoff in Alexandria, Virginia a letter stating that to avoid a formal ethics inquiry, Nachmanoff must provide Plaintiff a copy of the requested documents from his file pursuant to Rule of Professional Conduct 1.16(e).

69. On March 14, 2008, Nachmanoff mailed  a letter to the Virginia Bar from Alexandria, Virginia citing  and attached a copy of Frank Dunham's November 21, 2003 letter. That November 21, 2003 letter falsely claimed the entirety of Plaintiff's official file had been

16

sent to Plaintiff. Nachmanoff knew Dunham's letter was knowingly and intentionally false because Nachamnoff, Davis and Dunahm had met on November 20, 2003 and agreed among themselves to suppress certain critical documents from Plaintiff's view. Nachmanoff made this misstatement of material fact to deceive the Bar and derail Plaintiff's request for documents.  Nachmanoff knew the package Dunham sent was not the entirety of relevant documents requested by Plaintiff.  Just two weeks after Nachmanoff wrote that letter to the Bar, he himself sent Plaintiff two large packages of documents from Plaintiff's file containing more than ten times the documents Dunham had sent. Nachmanoff never corrected his earlier statement to the Bar. Nachmanoff knew his letter to the Virginia professing compliance with professional Rules was intentionally misleading.

70. On March 28, 2008, Nachmanoff sent via United States Mail from Alexandria, Virginia two large mailing packs containing approximately six inches of documents, most of which Plaintiff had never seen before.  For instance, AUSA Boente's February 28, 2003 transmittal letter with the unsealed  search warrant affidavits was now revealed, as was the September 2004 letter regarding "draft" affidavits. Also included in the materials sent by Defendant Nachmanoff was a purported "Communications Log" which was portrayed as representing the official record of all communications between Plaintiff and any member of the public defenders office.  The Log entries stopped as of May 29, 2003. Plaintiff was not sentenced until July 21, 2003.  Plaintiff wrote a letter to Nachmanoff in Alexandria, Virginia asking for any records after May 29, 2003. Defendants refused to provide any record for occurrences after May 29, 2003.  In truth and in fact, the Log was not contemporaneously kept. The Log was created to mislead Plaintiff and the district court

EXHIBIT A

and prevent discovery of the facts because it omitted critical information and altered the true version of other events.

71. Nachmanoff wrote a letter and mailed it or caused it to be mailed from Alexandria, Virginia on April 18, 2008, telling Plaintiff the two large envelopes sent on March 28, 2008, represent "everything that we have in file with respect to notes, memoranda and correspondence …". This statement was intentionally and materially false and designed to mislead Plaintiff. In July 2017, the new public defender, who had no vested interest in continuing the coverup perpetrated by Defendants, provided Plaintiff the entire file, containing the critical documents Plaintiff sought since 2003.

72. On July 10, 2017, the Office of Public Defender in Alexandria, Virginia mailed to Plaintiff original notes and timesheets of Davis and Nachmanoff which were contemporaneously created while Defendants charged hours to Plaintiff's case. These records had previously been knowingly and intentionally suppressed by Nachmanoff and Davis. The documents were mailed to Plaintiff via U.S. Postal Service from Alexandria Virginia and transmitted on official public defender letterhead stationery.

73. The notes and records provided to Plaintiff on July 10, 2017 show Defendant Davis recorded sixty six (66) additional significanct entries and notes related to Plaintiff's request for documents, for events which occurred between May 29, 2003 and October 30, 2003.

74. The notes and records provided to Plaintiff on July 10, 2017 show Defendant Nachmanoff recorded seventeen (17) additional dates of significance with notes related to Plaintiff's request for documents, for events which occurred between May 29, 2003 and September 26, 2003.

18

EXHIBIT A

75. Defendants Davis and Nachmanoff withheld these notes and records and jointly agreed to create a false Communications Log for the purpose of knowingly and intentionally misleading Plaintiff and the district court and preventing the discovery of true facts of the case.

76. The documents provided on July 10, 2017 show the affidavits of Nachmanoff to be misleading on material points such as the investigation and preparation for trial, the examination of the search warrant affidavit, and virtually every material representation made by Davis and Nachmanoff in their affidavits to the district court.

77. The documents provided on July 10, 2017 show that Defendant Davis' written motion to the district court in Alexandria, Virginia on August 2, 2002, asking for a Speedy Trial Act extension, is knowingly and intentionally false, contains false material facts and was designed to mislead the district court and deny Plaintiff his Constitutional and statutory rights.

78. Due to Defendants' refusal to defend Plaintiff in any meaningful manner, Plaintiff was sentenced to two hundred thirty five (235) months incarceration. During that incarceration and continuing, Plaintiff has suffered and continues to suffer severe emotional distress.

## Count I
## Fraud
## All Defendants

79. Plaintiff incorporates preceding paragraphs numbered 1 through 78 as if fully set forth herein.

80. Defendants intentionally and knowingly falsely represented they had performed work they had not performed. Plaintiff relied on these representations.

19

81. Defendants intentionally and knowingly failed to perform work they were required to perform.

82. Defendants intentionally and knowingly withheld documents they were legally obligated to turn over to Plaintiff to prevent discovery of the facts and to deny Plaintiff rights and duties owed to Plaintiff. Plaintiff relied on Defendants false representations that they had turned over all relevant documents when they were requested to do so.

83. Defendants intentionally and knowingly misled and attempted to mislead the Plaintiff to his detriment and the detriment of the public, who rely on the public defender's service to provide honest services.

84. Defendants intentionally and knowingly made false and misleading statements   and representations to Plaintiff, the Virginia Bar, and to the district court on matters of material fact.

85. Plaintiff had a right to rely on Defendants' representations and did reasonably rely on them that they had performed work they claimed they had performed, were truthful with Plaintiff in their dealings with him, had provided all relevant evidence to Plaintiff, and had provided truthful affidavits to Plaintiff and the district court.

86. Defendants intentionally and knowingly caused Plaintiff to lose his freedom and property through their actions.

87. Plaintiff has been damaged by the loss of more than $10,000,000.00 through Defendants' fraud.

WHEREFORE, Plaintiff respectfully prays this Court aware him $10,000,000.00 in compensatory damages, his costs and fees,  and  punitive damages of $100,000,000.00.

## Count II
## Constructive Fraud
## All Defendants

88.  Plaintiff incorporates preceding paragraphs numbered 1-87 as if fully set forth herein.

89.  Defendants intentionally and knowingly falsely represented material facts, to wit: that they had performed all lawyer duties in accordance with their court officer, Virginia Bar, and Federal Court Rules, had provided Plaintiff all documents from his file as requested, and had provided the district court with truthful affidavits.

90.  Defendants may not have intended to perform incompetently but they misrepresented material facts and instead of following ABA Guidelines, Court Officer ethical rules, and Virginia Rules of Professional Conduct, they failed to do perform their lawyer duties and made material false statements to the detriment of Plaintiff.

WHEREFORE, Plaintiff respectfully prays this Court award him $10,000,000 in compensatory damages, his costs and fees, and punitive damages of $100,000,000.00.

## Count III
## Breach of Fiduciary Duty
## All Defendants

91.  Plaintiff incorporates preceding paragraphs numbered 1-90 as if fully set forth herein.

92.  Davis and Nachmanoff were attorneys appointed to represent the legal interests of Plaintiff to the best of their ability. Davis and Nachmanoff had a fiduciary duty to Plaintiff. Davis and Nachmanoff knowingly and intentionally committed the torts of fraud, constructive fraud, intentional infliction of emotional distress, statutory conspiracy, common law conspiracy, and breach of duty of loyalty.

93.  Davis and Nachmanoff intentionally and knowingly failed to perform duties they knew they were required to perform.

21

**EXHIBIT A**

94. Davis and Nachmanoff intentionally and knowingly failed to file motions and take other steps they knew or should have known were necessary to protect Plaintiff's interests.

95. Davis and Nachmanoff intentionally and knowingly deprived Plaintiff of substantive and procedural rights to which Plaintiff was entitled under the law.

96. Davis and Nachmanoff intentionally and knowingly withheld documents Plaintiff requested and was entitled to from his file at the office of federal public defender in Alexandria, Virginia.

97. Davis and Nachmanoff intentionally  and knowingly withheld information from Plaintiff and the district court, which information was necessary for informed decisions and actions on the part of Plaintiff and the district court.

98. Davis and Nachmanoff knowingly and intentionally made material false statements to Plaintiff during the time of the criminal court case against Plaintiff and the time of the habeas proceedings in district court.

99. Davis and Nachmanoff knowingly and intentionally made material false statements to the district court with regard to Plaintiff's case.

100.     Davis and Nachmanoff actively worked with the prosecution to further their own political careers and failed to advocate for Plaintiff.

101.     Defendants had a fiduciary duty to Plaintiff, which they breached to the financial and liberty interests of the Plaintiff.

WHEREFORE, Plaintiff respectfully prays this Court award him $10,000,000.00 in compensatory damages, his costs and fees, and punitive damages of $100,000,000.00.

EXHIBIT A

## Count IV
### Statutory Conspiracy
### All Defendants

102.     Plaintiff incorporates the preceding paragraphs numbered 1-101 as if fully set forth herein.

103.     Defendants Davis and Nachmanoff  knowingly and intentionally acted in combination for the purpose of injuring Plaintiff Niblock and his businesses. Defendants did conspire and attempt to conspire  and mutually agree to commit tortious acts, knowing such acts to be wrongful and unlawful. Defendants knowingly and intentionally failed to protect Plaintiff's business, interests, or assets. Defendants conspired with the United States' prosecutor to reward Advantage Investors Mortgage (AIM) for their participation in Plaintiff's criminal prosecution by failing to conduct any investigation of Plaintiff's assets being held by AIM.

104.     These Defendants knowingly and intentionally  failed to perform duties they were required to perform, withheld documentary evidence they were required to provide to Plaintiff, withheld material facts, and made materially false and misleading statements to Plaintiff, the district court, and the Virginia Bar,  agreed to deprive Plaintiff of his civil, Constitutional and statutory rights, and agreed to submit false affidavits to the United States District Court. Plaintiff has been harmed by the actions of these Defendants.

WHEREFORE, Plaintiff respectfully prays this Court award him $10,000,000.00 in compensatory damages, his costs and fees, and punitive damages of $100,000,000.00.

EXHIBIT A

### Count V
### Common Law Conspiracy
### All Defendants

105.     Plaintiff incorporates preceding paragraphs numbered 1-104 as if fully set forth

herein.

106.     Defendants Davis and Nachmanoff knowingly and intentionally had an agreement

or understanding to fail to provide Plaintiff proper legal representation thereby injuring

Plaintiff and damaging Plaintiff's reputation.

107.     Defendants Davis and Nachmanoff intentionally and knowingly had an agreement

or understanding to withhold information, evidence and documents from Plaintiff and the

Court thereby injuring Plaintiff and damaging Plaintiff's reputation.

108.     Defendants Davis and Nachmanoff intentionally and knowingly had an agreement

or understanding to make materially false and misleading statements to Plaintiff, the district

court and the Virginia Bar for their own purposes thereby injuring Plaintiff and damaging

Plaintiff's reputation.

WHEREFORE, Plaintiff respectfully prays this Court award him $10,000,000.00 in

compensatory damages, his costs and fees, and punitive damages of $100,000,000.00.

### Count VI
### Breach of Duty of Loyalty
### All Defendants

109.     Plaintiff incorporates the preceding paragraphs numbered 1 – 108 as if fully set

forth herein.

110.     Defendants Nachnamoff and Davis had a common law fiduciary duty to Plaintiff

and owed a common law duty of loyalty to Plaintiff.

24

111.     Defendants Nachmanoff and Davis were obligated to represent Plaintiff to the best of their ability, to protect Plaintiff's interests, to be truthful with Plaintiff, to provide Plaintiff with documents from his file upon request.

112.     Defendants Nachmanoff and Davis knowingly and intentionally failed to represent Plaintiff's interests, actively worked against Plaintiff's interests, withheld relevant evidence and documents from Plaintiff, actively worked with the prosecutor in breach of their duty of loyalty to obstruct Plaintiff from vindication of statutory and Constitutional rights to which Plaintiff was entitled, actively covered-up their misdeeds by withholding information, making omissions of material facts, and making intentionally misleading statements to prevent Plaintiff from discovering the truth of the matters.

WHEREFORE, Plaintiff respectfully prays this Court award him $10,000,000.00 in compensatory damages, his costs and fees, and punitive damages of $100,000,000.00.

**Count VII**
**Intentional Infliction of Emotional Distress**
**All Defendants**

113.     Plaintiff incorporates the preceding paragraphs numbered 1 – 112 as if fully set forth herein.

114.     Defendants Davis and Nachmanoff's conduct was intentional and reckless. Defendants had the specific purpose of inflicting emotional distress upon Plaintiff, intended their specific conduct, and knew or should have known that emotional distress would likely result.

115.     The conduct of Defendants Davis and Nachmanoff was outrageous and intolerable and offends generally accepted standards of decency and morality.

116.    The intentional and reckless conduct of Defendants Davis and Nachmanoff caused

Plaintiff's emotional distress.

117.    Plaintiff's emotional distress was severe.

118.    WHEREFORE, Plaintiff respectfully prays this Court award him $10,000,000.00

in compensatory damages, his costs and fees, and punitive damages of $100,000,000.00.


Respectfully submitted,

James R. Niblock
6105 Seabrook Road
Lanham, MD 20706
(757)-451-9835
Jrniblock1@aol.com

26